1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10                         **WESTERN DIVISION**

11

12   STACI D. HARDY, Guardian Ad Litem of  )      No. CV 12-284-PLA
     J.M.H-B., a minor,                    )
13                                         )
                                           )
14              Plaintiff,                 )      **MEMORANDUM OPINION AND ORDER**
                                           )
15          v.                             )
                                           )
16   CAROLYN W. COLVIN,                    )
     ACTING COMMISSIONER OF SOCIAL         )
17   SECURITY ADMINISTRATION,              )
                                           )
18              Defendant.                 )
                                           )
19   _____)

20                                  **I.**

21                             **PROCEEDINGS**

22          Staci D. Hardy ("plaintiff"), on behalf of her minor daughter J.M.H-B., filed this action on

23   January 17, 2012, seeking review of the Commissioner's denial of J.M.H-B.'s applications for

24   Child's Insurance Benefits and a Lump-Sum Death Payment.  The parties filed Consents to

25   proceed before the undersigned Magistrate Judge on January 19, 2012, and February 14, 2012.

26   Pursuant to the Court's Order, the parties filed a Joint Stipulation on November 13, 2012, that

27   addresses their positions concerning the disputed issues in the case. The Court has taken the

28   Joint Stipulation under submission without oral argument.

## II.

## **BACKGROUND**

On August 13, 2004, and September 28, 2004, plaintiff filed applications for J.M.H-B.[1] seeking Child's Insurance Benefits and a Lump-Sum Death Payment, alleging that J.M.H-B. qualifies as the child of Donnell Delon Brice ("Brice") under the Social Security Act. [Administrative Record ("AR") at 27-34.]   After the applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 35-38, 41-48.] A hearing was held on March 2, 2006.  [AR at 117-33.]  J.M.H-B. appeared with counsel at the hearing.  [AR at 119.]  Plaintiff also appeared at the hearing and testified as a witness.  [AR at 120-30.]  On April 3, 2006, the ALJ found in a revised decision[2] that J.M.H-B. was "not eligible for Survivor benefits under the Social Security Act" (the "2006 decision").  [AR at 15-18.]  On January 26, 2007, the Appeals Council denied plaintiff's request for review and advised plaintiff that the ALJ's decision would stand as the final decision of the Commissioner in J.M.H-B.'s case.[3]  [AR at 4-7.]  On March 21, 2007, plaintiff filed a complaint in this Court in Case No. CV 07-1764-PLA. On March 13, 2009, the Court issued an Order and Judgment affirming the decision of the Commissioner.  [See AR at 147.]  Plaintiff appealed to the Ninth Circuit Court of Appeals.  On November 2, 2010, the Ninth Circuit vacated this Court's March 13, 2009, Order and remanded the matter to this Court with instructions to remand to the Commissioner for further proceedings consistent with its disposition. [AR at 149-53.] On February 8, 2011, the Court remanded the

---

[1]   Both of plaintiff's applications, as well as the ALJ's decision, indicate that the initials of J.M.H-B.'s last name are "H-M."  [AR at 15-16, 27, 33.]  However, J.M.H-B.'s last name on the Complaint is "H-B."  The latter last name is consistent with plaintiff's testimony at the March 2, 2006, hearing that J.M.H-B.'s birth certificate was amended to reflect a last name with the initials of "H-B."  [AR at 127-28.]

[2]   The ALJ's initial decision -- dated March 29, 2006 -- was rescinded and replaced by the revised decision dated April 3, 2006.  [AR at 13A-G, 15.]

[3]   The Appeals Council referenced the March 29, 2006, decision in the "Notice of Appeals Council Action."  [AR at 4.]  In light of the fact that the March 29, 2006, decision was replaced by the revised decision dated April 3, 2006, the revised decision is the controlling ALJ decision.  [AR at 15-18.]

2

1  action to the Commissioner pursuant to the Ninth Circuit's decision.   [AR at 147-48.]   On

2  November 10, 2011, the Appeals Council issued a decision again finding that J.M.H-B. "is not

3  eligible for benefits as the wage earner's surviving child under the Social Security Act."[4]  [AR at

4  137-43.]  This action followed.

5

6                                          **III.**

7                                 **STANDARD OF REVIEW**

8          Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's

9  decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial

10 evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater,

11 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

12         In this context, the term "substantial evidence" means "more than a mere scintilla but less

13 than a preponderance -- it is such relevant evidence that a reasonable mind might accept as

14 adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at

15 1257.  When determining whether substantial evidence exists to support the Commissioner's

16 decision, the Court examines the administrative record as a whole, considering adverse as well

17 as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th

18 Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court

19 must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala,

20 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

21 /

22 /

23 /

24 _____

25         [4]    Prior to the Appeals Council's November 10, 2011, decision, the Appeals Council -- on

26 March 24, 2011 -- issued an order remanding the case to an ALJ for further proceedings
   consistent with the Ninth Circuit's decision.  [AR at 230.]  On July 20, 2011, the Appeals Council

27 vacated its March 24, 2011, order of remand (noting that it had been issued in error since there
   was no factual dispute between the parties), and indicated that it would issue a new decision

28 without remanding to an ALJ for a supplemental evidentiary hearing.  [AR at 230-31.]

**IV.**

**DISCUSSION**

In the instant case, plaintiff seeks to establish that J.M.H-B. is eligible for child's survivor benefits as the child of Brice. The Commissioner has found, and plaintiff does not dispute, that the only way J.M.H-B. can establish that she is Brice's child under the Social Security Act and associated regulations is by establishing, pursuant to 20 C.F.R. § 404.355(a)(1), that she could inherit Brice's personal property as his natural child under the intestacy laws of California -- where Brice had his permanent home at the time of his death [see AR at 112]. [See AR at 17, 141; Joint Stipulation ("JS") at 3-10.] Under California Probate Code § 6453(b), a parental relationship exists for the purpose of intestate succession in California where "[a] court order was entered during the father's lifetime declaring paternity" or where one of two other sets of requirements are met. On September 12, 2005, more than one year after Brice's death, the Los Angeles County Superior Court entered judgment finding that Brice was the father of J.M.H-B. [See AR at 110-12.]

Plaintiff's first contention of error is that language in 20 C.F.R. § 404.355(b)(2) stating that the Commissioner "will not apply any State inheritance law requirement ... that an action to establish paternity must have been started or completed before the worker's death" abrogates the "during the father's lifetime" limitation found in California Probate Code § 6453(b). Plaintiff contends that the "court order ... declaring paternity" entered after Brice's death therefore suffices, by itself, to establish under section 6453(b) that J.M.H-B. is Brice's child for the purpose of obtaining child's survivor benefits. [JS at 5-9.] Defendant argues that the sentence from section 404.355(b)(2) quoted above "refers to time limits under state law" that time-bar a child from bringing an action to establish paternity. [JS at 13.] Defendant asserts that because California Probate Code § 6453(b) does not time-bar a child in California from bringing an action to establish paternity -- "the result that section 404.355(b)(2) is intended to prevent" -- section 404.355(b)(2) does not abrogate the "during the father's lifetime" requirement in section 6453(b). [JS at 18.]

Plaintiff's second contention of error asserts that the application of section 6453(b)'s "during the father's lifetime" requirement to J.M.H-B.'s ability to establish that she is Brice's child under California's intestacy laws, and thus under the Social Security Act (see 20 C.F.R. § 404.355(a)(1)),

4

1   "would clearly result in violation of [J.M.H-B.'s] right to equal protection of the law."  [JS at 9-10.]

2   In response, defendant contends, among other things, that plaintiff relies on cases that are

3   distinguishable from the instant case.  [JS at 20-22.]

4          For the reasons set forth below, the Court respectfully disagrees with plaintiff, and affirms

5   the Commissioner's decision.

6

7   **A.      THE APPLICABLE STATUTE AND REGULATIONS**

8          The Social Security Act requires the Commissioner to determine whether a child is entitled

9   to receive child's survivor benefits.  See 42 U.S.C. § 402(d).  Under 42 U.S.C. § 402(d), in order

10  to qualify for child's insurance benefits, the claimant must show that she was a child of, and

11  dependent on, the wage earner at the time of the wage earner's death.  42 U.S.C. § 402(d)(1)(C).

12  The Social Security Act outlines the requirements for establishing a parental relationship.  See 42

13  U.S.C. § 416(h)(2)-(3).  A claimant is considered to be the child of a deceased insured individual

14  if she is deemed to be the child of the decedent under the law of intestate succession of the state

15  in which the decedent was domiciled at the time of his death.  See 42 U.S.C. § 416(h)(2)(A).

16         Federal regulations similarly instruct when a claimant is considered the child of a deceased

17  insured individual.  Pursuant to 20 C.F.R. § 404.355, a child is eligible for benefits as the insured's

18  natural child if the claimant could inherit the insured's personal property as his natural child under

19  state inheritance laws.  See 20 C.F.R. § 404.355(a)(1).  Incorporated by reference into subsection

20  (a) of section 404.355 is subsection (b) of that same section, which states that the intestacy laws

21  of the state where the insured had his permanent home when he died are used to determine

22  whether a claimant has inheritance rights as the natural child of the insured.  20 C.F.R. §

23  404.355(b)(1).  The application of state law regarding intestate succession is modified by 20

24  C.F.R. § 404.355(b)(2), which was added to section 404.355 in a 1998 amendment, effective

25  November 27, 1998.  See Application of State Law in Determining Child Relationship, 63 Fed.

26  Reg. 57,590 57,593 (Oct. 28, 1998); 20 C.F.R. § 404.355(b)(2).  The first sentence of section

27  404.355(b)(2) provides:

28

> We will not apply any State inheritance law requirement that an action to establish paternity must be taken within a specified period of time measured from the worker's death or the child's birth, or that an action to establish paternity must have been started or completed before the worker's death.

20 C.F.R. § 404.355(b)(2).

Under California law, a parental relationship exists for the purpose of determining intestate succession "between a person and the person's natural parents, regardless of the marital status of the natural parents." Cal. Prob. Code § 6450. California Probate Code § 6453(b) sets forth, in relevant part, the following ways to determine whether a person is a "natural parent" for the purpose of intestate succession in California:

> (b) A natural parent and child relationship may be established pursuant to any other provisions of the Uniform Parentage Act, except that the relationship may not be established by an action under subdivision (c) of Section 7630 of the Family Code unless any of the following conditions exist:
>
> (1) A court order was entered during the father's lifetime declaring paternity.
>
> (2) Paternity is established by clear and convincing evidence that the father has openly held out the child as his own.
>
> (3) It was impossible for the father to hold out the child as his own and paternity is established by clear and convincing evidence.

Cal. Prob. Code § 6453(b).


**B.     THE NINTH CIRCUIT'S MEMORANDUM DISPOSITION**

In its November 2, 2010, unpublished Memorandum Disposition vacating this Court's March 13, 2009, Order and Judgment in Case No. CV 07-1764-PLA, the Ninth Circuit stated:

> ... [T]he Commissioner argues that section 6453(b)(1)'s requirement that the father still be alive when paternity is declared is unaffected by section 404.355(b)(2) because the latter only affects the statute of limitations. This is a reasonable interpretation of the first clause of the first sentence of section 404.355(b)(2). That portion of the regulation reads:
>
> > We will not apply any State inheritance law requirement that an action to establish paternity must be taken *within*

> *a specified period of time* measured from the worker's
> death or the child's birth....

20 C.F.R. § 404.355(b)(2) (emphasis added).  The language -- "within a specified period of time" -- directly addresses the statute of limitations issue.

The Commissioner's argument, however, fails to address the second half of the first sentence of section 404.355(b)(2).  That portion of the regulation reads:

> We will not apply any State inheritance law requirement
> ... that an action to establish paternity must have been
> started or completed *before the worker's death*.

20 C.F.R. § 404.355(b)(2) (emphasis added).  On its face, this language addresses an issue separate from the statute of limitations issue.  First, this second portion of the sentence, unlike the first part of the sentence, does not contain language that clearly refers to statutes of limitations, such as "within a specified period of time."  Second, reading this portion of the sentence as referring to statutes of limitations would render it superfluous because the first portion of the sentence already addresses the statute of limitations issue directly.  Reading this language as addressing only state statutes of limitations is therefore inconsistent with the language of the regulation.

[AR at 151-52.]   Noting that it "hesitate[d] to impose a construction without giving the agency an opportunity to clarify its interpretation," the Ninth Circuit remanded the case to allow the agency to clarify its interpretation of 20 C.F.R. § 404.355(b)(2) in light of the regulatory language identified by that court.  [AR at 152-53.]

## C.    THE APPEALS COUNCIL'S DECISION ON REMAND

On November 10, 2011, the Appeals Council issued a decision addressing the Ninth Circuit's Memorandum Disposition.  In its decision, the Appeals Council stated that "[s]ection 404.355(b)(2) refers to time limits established by state law that would prohibit a claimant from seeking a paternity judgment in state court."[5]  [AR at 139.]  In support of that interpretation, the

---

[5]    As discussed <u>infra</u>, under the Appeals Council's reading, section 404.355(b)(2) is inapplicable to California Probate Code § 6453(b) and therefore does not abrogate the "during the father's lifetime" requirement found therein.  According to plaintiff, however, section 404.355(b)(2) *does* abrogate the "during the father's lifetime" requirement, which would render the paternity order entered after Brice's death sufficient to establish that J.M.H-B. is eligible for child's survivor benefits.

Appeals Council relied on the following language from the agency's Notice of Proposed Rulemaking concerning the 1998 amendment that added what is now 20 C.F.R. § 404.355(b)(2) [see AR at 139]:

> Many State laws impose time limits within which someone must act to establish paternity for purposes of intestate succession. Such time limits are intended to provide for an orderly and expeditious settlement of estates. Since this is not the purpose of Social Security benefits for children, we provide in these final regulations that we will not apply a State's time limits within which a child's relationship must be established when we determine the child's status under section 216(h)(2)(A).

Application of State Law in Determining Child Relationship, 63 Fed. Reg. at 57,591. The Appeals Council then stated: "This reference to state law 'time limits' was contextual. As explained in the Notice of Proposed Rulemaking, the 1998 revisions responded to the barriers created by the laws of many states that time-barred the ability of children of unwed parents to establish paternity." [AR at 139 (citation omitted).] In support, the Appeals Council cited cases discussing laws in Georgia, Alabama, and Texas that time-barred the ability of children of unwed parents to establish paternity, and stated that:

> Thus, because of the various state law requirements that existed at the time of the regulatory change, the first half of the first sentence of 20 C.F.R. § 404.355(b)(2) addressed state statutes that had explicit length-of-time limitations, and the second half of the sentence addressed state statutes that prohibited children from obtaining a paternity judgment after the presumed father died. Both halves of the first sentence of [] 20 C.F.R. § 404.355(b)(2) must be read together, as they both pertain to "time limits," broadly defined, and they are both directly tied to the rationale of policy change expressed by the regulation.

[AR at 140.] In addition to the Notice of Proposed Rulemaking, the Appeals Council relied on the Social Security Administration's Program Operations Manual ("POMS")[6] to support its

---

[6]   Although the POMS "is an internal Social Security Administration manual, for the internal use of Social Security Administration employees, and has no legal force and does not bind the Social Security Administration" (Knott v. Barnhart, 269 F. Supp. 2d 1228, 1234 (E.D. Cal. 2003) (citation omitted)), it can be persuasive authority in discerning the agency's interpretation. See Hermes v. Secretary of Health & Human Servs., 926 F.2d 789, 791 n.1 (9th Cir. 1991) (citing Evelyn v. Schweiker, 685 F.2d 351, 352 n.5 (9th Cir. 1982)). The various sections of the POMS referenced in this Order can be found on the Social Security Online database, at

1  representation that the _entire_ first sentence in 20 C.F.R. § 404.355(b)(2) concerns "time limits,"

2  stating:

3        The Commissioner further explained this policy regarding time
         limits in the publicly available guidance provided to agency employees
4        in the POMS. "The regulations that became effective on 11/27/98
         changed SSA's policy on applying State law time limits within which
5        paternity must be established for inheritance purposes" (POMS GN
         00306.075.B.3). "For cases adjudicated under the policy contained
6        in the new regulations, SSA will not apply the following types of time
         limits: (1) requirements that an action to establish paternity must be
7        taken within a specified period of time measured from the [insured's]
         death or the child's birth; and (2) requirements that an action to
8        establish paternity must have been started or completed before the
         [insured's] death" (POMS GN 00306.075.B.3).

9

10 [AR at 140 (brackets in original).]

11        Turning to the section of the California Probate Code whose application plaintiff argues is

12 altered by section 404.355(b)(2) in this case, the Appeals Council explained that:

13        Section 6453(b) of the California Probate Code does not time-
         bar an individual's ability to establish a parent-child relationship. In
14       the matter at issue, the claimant actually obtained a paternity
         judgment under California family law, and was not time-barred from
15       taking action to establish paternity ([AR at 110-11]).[7] Rather, Section
         6453(b) anticipates that some paternity judgments will be obtained
16       after a putative father dies, and it sets forth the evidentiary burden of
         proof to be applied in such situations. The Administrative Law Judge
17       found that the claimant could not inherit the wage earner's property as
         his natural child because she failed to meet her burden of proof under
18       the relevant state evidentiary requirements under the intestacy laws
         of California, not because she was time-barred from taking action to
19       establish paternity.

20        Under California law, parties may bring a court action to
         "determine the existence of the father and child relationship with
21       respect to a child who has no presumed father under [Cal. Fam. Code
         § 7611] or whose presumed father is deceased" (California Family
22       Code § 7630(c)). However, for purposes of intestate succession,
         where a judgment under Section 7630(c) is used to establish the
23       natural child relationship under the California Probate Code, and
         where the court order was not entered during the father's lifetime, the
24       party wishing to establish paternity must either provide clear and
         convincing evidence that the father "openly held out the child" as his

25

26  _____

    https://secure.ssa.gov/apps10/poms.nsf/partlist.

27

28  [7]  This citation by the Appeals Council referred to the September 12, 2005, Los Angeles
    County Superior Court judgment finding that Brice was the father of J.M.H-B. [_See_ AR at 110-11.]

9

1        own; or, where holding out was impossible, provide clear and convincing evidence of paternity (California Probate Code §

2        6453(b)[)].

3               Section 6453(b) does not set a time limit for obtaining a paternity judgment, nor does it bar a paternity action that was not

4        "started or completed" before the death of the putative father. It relies on a Family Code provision that does not specify any time limit for the

5        paternity action (see California Family Code § 7630(c)). Instead, Section 6453(b) sets forth the burden of evidentiary proof required to

6        establish inheritance rights in situations where the individual cannot participate in the paternity action or contest the paternity judgment

7        because he is deceased (see In re Estate of Chambers, 96 Cal. Rptr. 3d 651, 654-55 (Cal. Ct. App. 2009) (discussing Section 6453(b) and

8        explaining that its purpose is to set forth the "clear and convincing" burden of proof where paternity judgment occurred after alleged

9        father's death)).

10  [AR at 140-41 (footnote and some brackets added).]  While the Appeals Council did not explicitly

11  state in its decision that 20 C.F.R. § 404.355(b)(2) does not apply to California Probate Code §

12  6453(b), its discussion of section 6453(b), and its ultimate conclusion that J.M.H-B. has not

13  established that she is Brice's child under the Social Security Act, clearly indicates that it reached

14  that determination.  The Appeals Council further noted that plaintiff does not contest the ALJ's

15  finding "that the deceased wage earner did not hold [J.M.H-B.] out as his child before he died,

16  even though it would have been possible for him to do so," and that plaintiff "has not established

17  a presumption of paternity under any other provision of California law."[8]  It therefore concluded

18  that plaintiff "has not established that [J.M.H-B.] is the wage earner's child within the meaning of

19  the Social Security Act."  [AR at 141 (citation omitted).]

20  /

21  /

22  /

23  /

24  /

25

26

27

28

---

[8]   The ALJ found in the April 3, 2006, decision that "it is undisputed that [Brice] never held [J.M.H-B.] out to be his own," that "it was ... not 'impossible' for him to do so," and that "paternity cannot be established under [the] state inheritance law provision of 20 C.F.R. § 404.355 and no other category of entitlement arguably applies."  [AR at 16-17.]

D.     **THE APPEALS COUNCIL'S INTERPRETATION OF 20 C.F.R. § 404.355(b)(2) IS REASONABLE AND ENTITLED TO DEFERENCE**

The first issue before the Court is whether, in light of the Appeals Council's clarification of 20 C.F.R. § 404.355(b)(2) on remand, the Commissioner's determination that J.M.H-B. is not Brice's child within the meaning of the Social Security Act is entitled to deference.

"Substantial deference" is to be accorded an agency when it interprets its own regulations. See Lezama-Garcia v. Holder, 666 F.3d 518, 525 (9th Cir. 2011). When the meaning of regulatory language is ambiguous, an agency's interpretation of that language is "controlling unless plainly erroneous or inconsistent with the regulation." Auer v. Robbins, 519 U.S. 452, 461, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997). In other words, the agency's interpretation of the regulation controls so long as it is "reasonable," that is, "so long as the interpretation sensibly conforms to the purpose and wording of the regulations." Lezama-Garcia, 666 F.3d at 525 (internal quotations and citations omitted). Thus, the Court must defer to the agency's construction "unless an 'alternative reading is compelled by the regulation's plain language or by other indications of the [Commissioner's] intent at the time of the regulation's promulgation.'" Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512, 114 S. Ct. 2381, 129 L. Ed. 2d 405 (1994) (quoting Gardebring v. Jenkins, 485 U.S. 415, 430, 108 S. Ct. 1306, 99 L. Ed. 2d 515 (1988)).

Here, the language of 20 C.F.R. § 404.355(b)(2) in isolation is ambiguous as to whether this section abrogates the "during the father's lifetime" limitation in California Probate Code § 6453(b). If that limitation is a "State inheritance law requirement ... that an action to establish paternity must have been ... completed before the worker's death" (see 20 C.F.R. § 404.355(b)(2)), then section 404.355(b)(2) applies, and renders a paternity order entered at any time sufficient by itself to establish eligibility for child's survivor benefits under California Probate Code § 6453(b). If, however, the "during the father's lifetime" limitation in section 6453(b) is not a "State inheritance law requirement ... that an action to establish paternity must have been ... completed before the worker's death," then a paternity order must be entered during the father's lifetime in order to be used as the sole basis for establishing eligibility for child's survivor benefits under California Probate Code § 6453(b).

1       *1.     The Appeals Council's Interpretation That the Entire First Sentence of Section
2               404.355(b)(2) Pertains to "Time Limits" is Reasonable*

3       In its decision, the Appeals Council commenced its analysis by explaining that the entire

4       first sentence in 20 C.F.R. § 404.355(b)(2) "refers to time limits established by state law that would

5       prohibit a claimant from seeking a paternity judgment in state court." [AR at 139-40.]   The Court

6       finds that this interpretation is reasonable because it sensibly conforms to the purpose of the

7       section, is consistent with the Social Security Act and the Commissioner's regulations as a whole,

8       and is supported by the relevant case law.

9               a.      The Appeals Council's Reading Concerning "Time Limits" Is Consistent with
10                      the Purpose of Section 404.355(b)(2)

11      In support of its interpretation that the entire first sentence of 20 C.F.R. § 404.355(b)(2)

12      "refers to time limits established by state law that would prohibit a claimant from seeking a

13      paternity judgment in state court," the Appeals Council began by citing the Notice of Proposed

14      Rulemaking issued concurrently with the proposed text of what is now section 404.355(b)(2). [AR

15      at 139.]   That Notice states that although many state laws "impose time limits within which

16      someone must act to establish paternity for purposes of intestate succession" in order to "provide

17      for an orderly and expeditious settlement of estates," "this is not the purpose of Social Security

18      benefits for children."  Application of State Law in Determining Child Relationship, 63 Fed. Reg.

19      at 57,591.  The Notice further states that the Commissioner therefore "will not apply a State's time

20      limits within which a child's relationship must be established when ... determin[ing] the child's

21      status under section 216(h)(2)(A)."  Id.

22      To provide "context[]" for the Notice of Proposed Rulemaking's reference to "time limits,"

23      the Appeals Council cited three cases that it represented dealt with the type of state law time limits

24      section 404.355(b)(2) was promulgated to address.  [AR at 139-40.]  First, it cited Daniels on

25      Behalf of Daniels v. Sullivan, 979 F.2d 1516, 1518-21 (11th Cir. 1992) [AR at 139-40], in which

26      the Eleventh Circuit addressed a Georgia intestacy law that provided that:

27              A child born out of wedlock may not inherit from or through his father
                or any paternal kin by reason of the paternal kinship *unless, during the*
28              *lifetime of the father and after the conception of the child*, either (1) a

court of competent jurisdiction has declared the child to be legitimate
or has entered an order establishing paternity or (2) the father has
signed the birth certificate or executed a signed, sworn statement
attesting to paternity.

Daniels, 979 F.2d at 1518 n.2 (emphasis in original) (brackets, internal quotations and citation omitted).  The Eleventh Circuit held that, as applied to the claimant, who was less than two and one-half years old when his putative father died, "the Social Security Act's incorporation of the Georgia intestacy scheme violate[d] equal protection" because it made the child's status of illegitimacy an insurmountable barrier to his receipt of child's survivor benefits.[9]  Daniels, 979 F.2d at 1520-21.  The Appeals Council also cited Handley, By and Through Herron v. Schweiker, 697 F.2d 999, 1002 (11th Cir. 1983), in which Alabama's intestacy scheme was at issue.  [AR at 140.] Under Alabama law at the time, there were three means by which an illegitimate child could inherit from an intestate father short of adoption by the father: (1) the father could marry the mother and recognize the child as his own; (2) the father could legitimate the child by following the statutory procedure for legitimation by written declaration; or (3) the court could make a judicial determination of paternity during the father's lifetime.  Handley, 697 F.2d at 1001.  The Eleventh Circuit held that because "all routes to legitimation [under the Alabama intestacy scheme] [were] actionable only during the father's lifetime," the intestacy scheme imposed an insurmountable barrier to the receipt of child's insurance benefits by the claimant -- whose father died four months after her birth -- and was therefore unconstitutional as applied to her.  Id. at 1002-06.  Finally, the Appeals Council cited Mills v. Habluetzel, 456 U.S. 91, 101, 102 S. Ct. 1549, 71 L. Ed. 2d 770 (1982), in which the United States Supreme Court declared unconstitutional a Texas law requiring that any suit to establish the parent-child relationship between an illegitimate child and the child's natural father by proof of paternity -- which was necessary to establish the Mills child's right to child support from the father -- had to be brought before the child was one year old.  The Supreme

---

[9]   The Supreme Court has articulated two tests for assessing the constitutionality of classifications based on illegitimacy -- the "insurmountable barrier" test (Gomez v. Perez, 409 U.S. 535, 538, 93 S. Ct. 872, 35 L. Ed. 2d 56 (1973); Labine v. Vincent, 401 U.S. 532, 539, 91 S. Ct. 1017, 28 L. Ed. 2d 288 (1971)), and the less stringent "substantial relationship" test (Lalli v. Lalli, 439 U.S. 259, 268, 99 S. Ct. 518, 58 L. Ed. 2d 503 (1978)).

1   Court found that the one-year period for bringing a paternity action was "not substantially related

2   to the State's interest in avoiding the prosecution of stale or fraudulent claims." Id.  Referencing

3   the laws addressed by Daniels, Handley, and Mills, the Appeals Council stated: "[t]hese state law

4   time limits directly correlated to the language used in the first sentence of 20 C.F.R. §

5   404.355(b)(2)."  [AR at 140.]

6        Finally, the Appeals Council pointed to the agency's explanation in POMS § GN

7   00306.075.B.3 of its "policy regarding time limits" found in section 404.355(b)(2):

8              The regulations that became effective on 11/27/98 changed
           SSA's policy on applying State law time limits within which paternity
9           must be established for inheritance purposes.  Previously, SSA
           applied those time limits ... .  For cases adjudicated under the policy
10          contained in the new regulations, SSA will not apply the following
           types of time limits: (1) requirements that an action to establish
11          paternity must be taken within a specified period of time measured
           from the [insured's] death or the child's birth; and (2) requirements
12          that an action to establish paternity must have been started or
           completed before the [insured's] death.

13

14   POMS § GN 00306.075.B.3.  While not the product of formal rulemaking, the POMS may

15   nevertheless be given deference according to its persuasiveness.[10]  See Washington State Dep't

16   of Social and Health Servs. v. Guardianship Estate of Keffeler, 537 U.S. 371, 385-86, 123 S. Ct.

17   1017, 154 L. Ed. 2d 972 (2003) (the POMS may be treated with deference even though it is not

18   the product of formal rulemaking) (citing Skidmore v. Swift & Co., 323 U.S. 134, 139-140, 65 S.

19   Ct. 161, 89 L. Ed. 124 (1944)); Power v. Barnhart, 292 F.3d 781, 785-86 (D.C. Cir. 2002)

20   (granting, under Skidmore, the Commissioner's interpretation in the POMS "only so much

21   deference as its persuasiveness warrants"); see also McNamar v. Apfel, 172 F.3d 764, 766-67

22   (10th Cir. 1999) (holding certain POMS sections entitled to controlling weight unless arbitrary or

23   capricious); Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998) (agency's interpretation in POMS

24   entitled to deference and "will not be disturbed as long as ... reasonable and consistent with the

25

26        [10]   Plaintiff does not argue that deference should not be given to the Commissioner's
27   interpretation in the POMS, or that the interpretation of section 404.355(b)(2) as contained in the
    POMS is unreasonable.  Moreover, plaintiff attempts to rely on § GN 00306.075.B.3 to support her
28   argument.  [See JS at 8.]

statute"); Baker v. Sullivan, 1991 WL 104306, at *2 (C.D. Cal. Feb. 25, 1991) (deference to the POMS was proper where the Commissioner's interpretation of the Social Security Act as articulated in the POMS was not unreasonable).

Taken together, the Notice of Proposed Rulemaking, the case law identified by the Appeals Council, and POMS § GN 00306.075.B.3 lend persuasive support to the Appeals Council's interpretation that the purpose of the first sentence in section 404.355(b)(2) is to prevent the agency from applying "time limits established by state law that would prohibit a claimant from seeking a paternity judgment in state court." [AR at 139.] First, both the Notice and the POMS *linguistically* support the Appeals Council's representation that: "Both halves of the first sentence of section 20 C.F.R. § 404.355(b)(2) ... pertain to 'time limits,' broadly defined, and ... are both directly tied to the rationale of policy change expressed by the regulation." [AR at 140.] The Notice and the POMS repeatedly use the term "time limits" in discussing the types of state law requirements the Commissioner, under what is now section 404.355(b)(2), will not apply when making determinations under the Social Security Act, and § GN 00306.075.B.3 describes the "time limits" at issue using the same two categories of state law requirements as those set forth in section 404.355(b)(2). Compare POMS § GN 00306.075.B.3 with 20 C.F.R. § 404.355(b)(2). Second, the Appeals Council's citation to Daniels, Handley, and Mills, *substantively* supports its elaboration that the "time limits" addressed by section 404.355(b)(2) are "time limits established by state law that would prohibit a claimant from seeking a paternity judgment in state court." [AR at 139.] The Texas law discussed in Mills -- requiring that a paternity action be brought before the child turned one -- exemplifies the language in the first clause of the first sentence in section 404.355(b)(2) concerning any requirement "that an action to establish paternity must be taken within a specified period of time measured from the worker's death or the child's birth." 20 C.F.R. § 404.355(b)(2). Similarly, the requirement under Georgia law and Alabama law addressed in Daniels and Handley, respectively -- that a paternity order could only be obtained during the lifetime of the father -- exemplifies the language in the second clause of the first sentence in section 404.355(b)(2) concerning any requirement "that an action to establish paternity must have been started or completed before the worker's death." Id. The direct correlation between these

15

cases and the text of both parts of the first sentence in section 404.355(b)(2) convincingly illustrates the Appeals Council's representation that: "because of the various state law requirements that existed at the time of the regulatory change, the first half of the first sentence of 20 C.F.R. § 404.355(b)(2) addressed state statutes that had explicit length-of-time limitations, and the second half of the sentence addressed state statutes that prohibited children from obtaining a paternity judgment after the presumed father died." [AR at 140.] Accordingly, the Notice, the POMS, and the case law cited by the Appeals Council persuasively support its interpretation that both halves of the first sentence in section 404.355(b)(2) "respond[] to the barriers created by the laws of many states that time-bar[] the ability of children of unwed parents to establish paternity," and therefore "refer[] to time limits established by state law that would prohibit a claimant from seeking a paternity judgment in state court." [AR at 139-40.]

In light of the above, the Court finds that the Appeals Council's interpretation -- that 20 C.F.R. § 404.355(b)(2) "refers to time limits established by state law that would prohibit a claimant from seeking a paternity judgment in state court" -- is consistent with the purpose of 20 C.F.R. § 404.355(b)(2), i.e., to prevent the agency from applying any state law time limit on a claimant's ability to obtain a paternity judgment such that the claimant might thereby be completely barred from receiving child's survivor benefits. See Lezama-Garcia, 666 F.3d at 525; Auer, 519 U.S. at 461.

b.    The Appeals Council's Reading Concerning "Time Limits" Is Consistent with the Statute and Regulations as a Whole

The Commissioner's interpretation that the entire first sentence of section 404.355(b)(2) "refers to time limits established by state law that would prohibit a claimant from seeking a paternity judgment in state court" is also consistent with the Social Security Act and the Commissioner's regulations as a whole. Under the Act, one way a claimant may be considered the child of a deceased insured individual is if the insured individual was decreed by a court to be the father of the child, and such court decree was made before the death of the insured individual. See 42 U.S.C. § 416(h)(3)(C)(i)(II). Similarly, 20 C.F.R. § 404.355(a)(3) provides that a child is eligible for benefits where she is the insured's natural child and the claimant's mother never

1  married the insured, but before the insured's death, the insured had been decreed by a court to

2  be the claimant's father.  These provisions of the Act and the Commissioner's regulations have

3  remained in effect since, and despite, the 1998 amendment to section 404.355.  <u>Compare</u> 42

4  U.S.C. § 416(h)(3)(C)(i)(II) (1997) <u>with</u> 42 U.S.C. § 416(h)(3)(C)(i)(II); <u>and</u> 20 C.F.R. § 404.355(c)

5  (1997) <u>with</u> 20 C.F.R. § 404.355(a)(3).  Thus, the Commissioner's explanation that "[s]ection

6  404.355(b)(2) refers to time limits established by state law that would prohibit a claimant from

7  seeking a paternity judgment in state court" harmonizes the language of 20 C.F.R. § 404.355(b)(2)

8  with that of 42 U.S.C. § 416(h)(3)(C)(i)(II) and 20 C.F.R. § 404.355(a)(3).  It is therefore the more

9  sensible reading and is entitled to deference.  <u>See</u> <u>Warre v. Comm'r of Social Security Admin.</u>, 439

10  F.3d 1001, 1004-05 (9th Cir. 2006) (Commissioner's interpretation of a regulatory requirement was

11  plausible where it was consistent with the wording of the regulation and the governing statute, as

12  well as with the context of the requirement); <u>see also</u> <u>Washington State Dep't of Social and Health</u>

13  <u>Servs.</u>, 537 U.S. at 387-88 (deference should be given to the Commissioner's interpretation of her

14  own regulation when it is "eminently sensible"); <u>Campbell ex rel. Campbell v. Apfel</u>, 177 F.3d 890,

15  893 (9th Cir. 1999) ("federal courts defer to an agency's reasonable interpretation of its statutes

16  and regulations").

17          c.      <u>The Appeals Council's Reading Concerning "Time Limits" Is Consistent with</u>
                    <u>the Relevant Case Law</u>

18

19          Finally, the Commissioner's interpretation that the entire first sentence of 20 C.F.R. §

20  404.355(b)(2) "refers to time limits established by state law that would prohibit a claimant from

21  seeking a paternity judgment in state court" is consistent with cases noting the purpose of that

22  section.  In <u>Javier v. Comm'r of Social Security</u>, 407 F.3d 1244 (D.C. Cir. 2005), for instance, the

23  D.C. Circuit, in concluding that section 404.355(b)(2) does not confer standing on a third-party to

24  challenge a child's legitimacy, noted (in relevant part) that the section "is intended instead to allow

25  a child to establish a filial relation without regard to state statutes of limitation that would otherwise

26  bar a paternity suit ... ."  <u>Id.</u> at 1248.  In addition, in <u>Drake ex rel. Atwood v. Apfel</u>, 2001 WL

27  705784, at *2 (N.D. Tex. June 18, 2001), the court noted that section 404.355(b)(2) "removes any

28  requirement that an action to determine paternity be filed within a state-imposed limitations

period," but "does not disturb the necessary legal bases for establishing paternity under state law." In doing so, the Court rejected the plaintiff's argument that section 404.355(b)(2) applied to exempt the claimant for child's survivor benefits from having to establish paternity under the clear and convincing standard of California Probate Code § 6453(b), and to allow the claimant instead to establish paternity under the preponderance of the evidence standard used by California courts in deciding actions for paternity.  Id.

              d.     The Appeals Council's Reading Concerning "Time Limits" Is Reasonable

In light of the above, the Court finds that the Appeals Council's interpretation that the entire first sentence of 20 C.F.R. § 404.355(b)(2) "refers to time limits established by state law that would prohibit a claimant from seeking a paternity judgment in state court" is consistent with the purpose of the section, the Social Security Act and the Commissioner's regulations as a whole, and the relevant case law.  The Appeals Council's reading is reasonable, and therefore deference is warranted.  See Lezama-Garcia, 666 F.3d at 525; Auer, 519 U.S. at 461.

        *2.*    *The Appeals Council Reasonably Found That 20 C.F.R. § 404.355(b)(2) Does Not Abrogate the "During the Father's Lifetime" Requirement in California Probate Code § 6453(b)*

Next, the Appeals Council also reasonably found that 20 C.F.R. § 404.355(b)(2) does not eliminate the "during the father's lifetime" requirement in California Probate Code § 6453(b), as this finding is similarly consistent with the purpose of the section, the statute and the Commissioner's regulations as a whole, and the relevant case law.

              a.     The Appeals Council's Interpretation of California Probate Code § 6453(b) Is Consistent with the Purpose of 20 C.F.R. § 404.355(b)(2)

The purpose of section 404.355(b)(2) supports the Appeals Council's interpretation that section 404.355(b)(2) does not apply to California Probate Code § 6453(b).  First, the Appeals Council correctly pointed out that neither section 6453(b) nor California Family Code § 7630(c) imposes a time-bar on an action to establish paternity in California.  Second, it also correctly noted that J.M.H-B. was not time-barred from taking an action to establish paternity, but actually obtained a court judgment declaring paternity after Brice's death.  [AR at 110-12.]  Third, section 6453(b) provides several ways that a child can establish a parental relationship between a child

18

1    and her natural parent for the purpose of intestate succession in California, one of which is that

2    "[a] court order was entered during the father's lifetime declaring paternity." See Cal. Prob. Code

3    § 6453(b). Thus, section 6453(b) is distinguishable from the laws addressed in Daniels, Mills, and

4    Handley, which either barred inheritance completely unless a paternity order was obtained during

5    the father's lifetime, or limited the ways in which a child could establish a parent-child relationship

6    to a paternity order obtained, or some other action taken, during the father's lifetime. Finally, the

7    relevant sections of the POMS do not interpret section 404.355(b)(2) as eliminating the "during

8    the father's lifetime" requirement in California Probate Code § 6453(b), but direct that if there is

9    no court order of paternity entered during the father's lifetime, then the claimant must instead meet

10   the criteria in either subsection (2) or subsection (3) of section 6453(b). See POMS § GN

11   00306.430(A)(1)(b)(7) ("[f]or court orders entered, or SSA determinations made, after the father's

12   death, the claimant must also" show that either: (a) paternity is established by clear and convincing

13   evidence that the father openly held out the child as his own, or (b) it was impossible for the father

14   to hold out the child as his own and paternity is established by clear and convincing evidence);

15   POMS § GN 00306.075 (POMS § GN 00306.430 reflects the SSA's policy in "[t]he regulations that

16   became effective on 11/27/98" regarding state law time limits); see also POMS § PR 01010.006(D)

17   (under the regulations, in applying California law, if there is no court order entered during the

18   father's lifetime, the SSA will (1) apply the clear and convincing standard of proof to determine

19   whether the father has held the child out as his own; or (2) determine whether there is clear and

20   convincing evidence of paternity if it was impossible for the father to openly hold the child out as

21   his own). As such, a comparison of California Probate Code § 6453(b) and the facts of this case

22   with the laws at issue in Daniels, Mills, and Handley, as well as the Commissioner's interpretation

23   on this issue as contained in the POMS, persuasively support the Appeals Council's conclusion

24   that section 6453(b)'s requirement that a qualifying court order declaring paternity be "entered

25   during the father's lifetime" is not the type of "time limit" that section 404.355(b)(2) was

26   promulgated to address.

27   /

28   /

1                b.      The Appeals Council's Interpretation of California Probate Code § 6453(b) Is

2                          Consistent with the Statute and the Regulation as a Whole

3        As discussed <u>supra</u>, the Commissioner's explanation that "[s]ection 404.355(b)(2) refers

4 to time limits established by state law that would prohibit a claimant from seeking a paternity

5 judgment in state court" harmonizes the language of 20 C.F.R. § 404.355(b)(2) with that of 42

6 U.S.C. § 416(h)(3)(C)(i)(II) and 20 C.F.R. § 404.355(a)(3).   Inversely, to read section

7 404.355(b)(2) in the manner plaintiff proposes -- as abrogating any state law requirement that, in

8 order to rely on a paternity judgment alone for the purpose of intestate succession, that judgment

9 must have been obtained during the father's lifetime -- would render the spirit of section

10 404.355(b)(2) inconsistent with that of 42 U.S.C. § 416(h)(3)(C)(i)(II) and 20 C.F.R. §

11 404.355(a)(3), which require that a court decree of paternity, by itself, can only establish a parental

12 relationship under the Social Security Act where the decree was made before the father's death.

13 Thus, the interpretation proposed by plaintiff would create an internal conflict in the regulations,

14 and should be avoided.  <u>See In re Transcon Lines</u>, 58 F.3d 1432, 1440 (9th Cir. 1995) (a court

15 "must, whenever possible, attempt to reconcile potential conflicts in statutory provisions").  As the

16 Commissioner's interpretation -- that section 404.355(b)(2) does not eliminate the "during the

17 father's lifetime" requirement in California Probate Code § 6453(b) -- is consistent with the statute

18 and the regulations, it is entitled to deference.  <u>See Warre</u>, 439 F.3d at 1004-05 (9th Cir. 2006);

19 <u>Washington State Dep't of Social and Health Servs.</u>, 537 U.S. at 387-88.

20                c.      The Appeals Council's Interpretation of California Probate Code § 6453(b) Is

21                          Consistent with Analogous Case Law

22        Finally, the only completely analogous case of which the Court is aware also undermines

23 plaintiff's argument that section 404.355(b)(2) eliminates the "during the father's lifetime" limitation

24 in California Probate Code § 6453(b).  In <u>McLaughlin v. Astrue</u>, 2012 WL 2449938 (E.D.N.Y. June

25 27, 2012), the plaintiff-claimant argued that section 404.355(b)(2) removed "the New York State

26 limitation[] making filiation orders effective only if issued before the parent's death."  <u>Id.</u> at *5.  The

27 plaintiff further argued that "with the limitation removed, the order of filiation issued by the New

28 York Family Court [after the insured's death] [was] sufficient to establish [the plaintiff's] eligibility

for benefits as a child of [the insured]."  Id.  The Commissioner represented that the time limits in section 404.355(b)(2) pertained only to those states with inheritance laws that "effectively bar ... 'illegitimate' children from establishing paternity after the punitive [sic] father's death, or within a proscribed time period after the putative father's death," and that New York's law did not fall within that category because it provided several alternate criteria for establishing paternity for the purpose of intestate succession.  Id.  The court found that, in light of the provisions of the Social Security Act and the associated regulations that allow a court order issued during the wage earner's lifetime to serve as one means for establishing a child's status, "it would be anomalous and unwarranted to conclude § 404.355(b)(2) was intended to abrogate the requirement that the order be obtained during the wage earner's lifetime when the purpose of the court order is to establish child status under the taker-in-intestacy test."  Id. at *6.  It therefore held that the Commissioner's interpretation that section 404.355(b)(2) did not remove "the New York State limitation[] making filiation orders effective only if issued before the parent's death" was reasonable, and affirmed the denial of benefits.  Id. at **5-6.  The New York law's provision of several methods other than a filiation order entered during the father's lifetime to establish paternity for the purpose of New York's intestacy scheme mirrors California Probate Code § 6453(b)'s provision of two methods other than the presentation of a paternity order entered during the father's lifetime to establish a parental relationship under California's intestacy scheme.  In addition, the unavailing argument made by the plaintiff in McLaughlin mirrors plaintiff's argument here that "the provision of California inheritance law [requiring] that the order of paternity be obtained before the wage earner's death should not be applied and Plaintiff should be entitled to child's survivor[] benefits on the basis of the posthumous California court order decreeing that Plaintiff was the child of the deceased wage-earner." [JS at 9.]  As such, the McLaughlin court's conclusion that the Commissioner reasonably interpreted section 404.355(b)(2) in that case undercuts plaintiff's argument here.  But cf. Low Dog v. Barnhart, 196 F. Supp. 2d 960, 966 (D.S.D. 2002) (finding that where one way a non-marital child in New York can establish that he is the legitimate child of his father for the purpose of intestate succession is where "a court of competent jurisdiction has, during the lifetime of the father, made an order of filiation declaring

paternity ...," the ALJ erred, in light of section 404.355(b)(2), by concluding that filiation orders entered after the father's death were insufficient under the Social Security Act; the court also found, however, that the claimants satisfied another method of establishing legitimacy under the same section of the intestacy statute), and Pereira ex rel. Blodgett v. Apfel, 2000 WL 1130078, at **5-6 (N.D. Cal. Aug. 1, 2000) (stating that where the insured's paternity had never been declared by any California court, the claimant correctly argued that under section 404.355(b)(2), "in order to show eligibility for child's benefits under [California] Probate Code § 6453(b)(1) a child of an alleged father who died domiciled in California need not obtain a court order but instead must only show actual paternity according to the [preponderance of the evidence] standard of proof required in California").

> ### d.   The Appeals Council's Interpretation of California Probate Code § 6453(b) Is Reasonable

In light of the above, the Court finds that the Appeals Council's interpretation that 20 C.F.R. § 404.355(b)(2) does not eliminate the "during the father's lifetime" requirement in California Probate Code § 6453(b) is consistent with the purpose of the section, the statute and regulations as a whole, and the relevant case law.  This interpretation is therefore reasonable and deference is warranted.  See Lezama-Garcia, 666 F.3d at 525; Auer, 519 U.S. at 461.

> ### 3.   Plaintiff's Additional Arguments Fail

Plaintiff argues that the Commissioner's contention that California Probate Code § 6453(b) "does not time-bar an individual's ability to establish a parent-child relationship" is "without any merit," because that section's requirement that the court order of paternity be entered during the father's lifetime has effectively time-barred J.M.H-B. from establishing a parent-child relationship under section 6453(b), and therefore under the Social Security Act.  [JS at 8 (citing AR at 140).] This argument fails to recognize that in addition to the presentation of "[a] court order ... entered during the father's lifetime declaring paternity," section 6453(b) provides two alternative methods to establish a natural parent-child relationship. See Cal. Prob. Code § 6453(b)(2)-(3) (allowing for paternity to be established by providing clear and convincing evidence that the father openly held out the child as his own, or by showing that it was impossible for the father to hold out the child

as his own and by establishing paternity by clear and convincing evidence).  Here, J.M.H-B. is not entitled to child's survivor benefits under the application of California Probate Code § 6453(b) because she has not satisfied the criteria of *any* of the three subsections of section 6453(b), and not only because the paternity judgment she obtained was entered after Brice's death.  Moreover, as noted supra, section 7630(c) of the California Family Code does not specify any time limit for bringing or completing a paternity action (see Cal. Fam. Code § 7630(c)), and J.M.H-B. in fact obtained a court judgment declaring paternity more than one year after Brice's death.  [AR at 110-12.]  Thus, the Appeals Council correctly stated that section 6453(b) "does not time-bar an individual's ability to establish a parent-child relationship."

Plaintiff also contends that the Appeals Council "gross[ly] misstate[d] ... the law" when it explained that: "[J.M.H-B.] failed to establish that she was the 'child' of the deceased wage earner under the Social Security Act not because she obtained a posthumous order of paternity, but because she lacked clear and convincing evidence that the deceased wage earner also held her out as his child."  [JS at 8-9 (citing AR at 141).]  The Court acknowledges that this statement by the Appeals Council is inaccurate to the extent it implies that J.M.H-B. has not established that she is Brice's child under California's intestacy laws not because she has not satisfied subsection (1) of section 6453(b), but because she has not satisfied subsections (2) or (3) of section 6453(b).  The reality is that J.M.H-B. has not established that she is Brice's child under California's intestacy scheme because she has not satisfied subsection (1), (2), *or* (3) of section 6453(b).  Despite the ambiguity of the statement at issue, however, the Appeals Council properly found that J.M.H-B. has not satisfied subsection (1) of section 6453(b), and plaintiff does not contest the Commissioner's finding that J.M.H-B. has not satisfied subsections (2) and (3) of that section. [See JS at 3-10.]  Thus, this single statement by the Appeals Council does not render its decision unsupported by substantial evidence.[11]

---

[11]  Neither can plaintiff establish that J.M.H-B. is entitled to benefits because "[t]he 1998 amendments to 20 C.F.R. § 404.355 supersede the 1990 Ninth Circuit Court's ruling in Casserino v. Sullivan, 921 F.2d 862 (9th Cir. 1990)[,] upon which the ALJ relied in denying [J.M.H-B.] child's survivor benefits (AR 17, 24)."  [JS at 5.]  In Casserino, the claimant argued that he was eligible (continued...)

1

*4.      Conclusion*

2      For the reasons set forth above, the Court finds that the Commissioner's interpretation of

3  section 404.355(b)(2) -- specifically, its interpretation that the entire first sentence of section

4  404.355(b)(2) "refers to time limits established by state law that would prohibit a claimant from

5  seeking a paternity judgment in state court," and its interpretation that the same sentence does

6  not eliminate the "during the father's lifetime" requirement in California Probate Code § 6453(b) --

7  is reasonable because it sensibly conforms to the purpose of the section, is consistent with the

8  Social Security Act and the Commissioner's regulations as a whole, and is supported by the

9  relevant case law.  In addition, deference is particularly appropriate where, as here, the application

10  of an agency's regulation requires an understanding of specific policy concerns and the

11  employment of expertise in determining the interaction between the Commissioner's regulations

12  and state laws.  See Martin v. Occupational Safety and Health Review Comm'n, 499 U.S. 144,

13  151, 111 S. Ct. 1171, 113 L. Ed. 2d 117 (1991) ("Because applying an agency's regulation to

14  complex or changing circumstances calls upon the agency's unique expertise and policymaking

15  prerogatives, [courts] presume that the power authoritatively to interpret its own regulations is a

16  component of the agency's delegated lawmaking powers."); Thomas Jefferson University, 512

17  U.S. at 512 (deference to an agency's interpretation is warranted all the more when "the regulation

18  concerns a complex and highly technical regulatory program, in which the identification and

19  classification of relevant criteria necessarily require significant expertise and entails the exercise

20  of judgment grounded in policy concerns") (citation omitted); Department of Health & Human

21

22

[11](...continued)

23  to receive child's insurance benefits because the paternity judgment entered against the father two
weeks after the father's death "constructively" satisfied 42 U.S.C. § 416(h)(3)(C)(i)(II)'s

24  requirement that a court decree be entered before the insured's death.  The Ninth Circuit held that
because the decree in that case was not entered before the father's death, 42 U.S.C. §

25  416(h)(3)(C)(i)(II) was not satisfied.  Id. at 863-64.  Plaintiff's contention here that Casserino has
been superseded by the 1998 amendment to 20 C.F.R. § 404.355, and thus "is no longer 'good

26  law' as asserted by the ALJ" [see JS at 5] is not well-taken.  As discussed supra, 42 U.S.C. §

27  416(h)(3)(C)(i)(II) -- the basis for the court's decision in Casserino -- has remained in effect since,
and despite, the 1998 amendment to section 404.355.  In addition, Casserino has not been

28  overruled or superseded by statute.

1   Services v. Chater, 163 F.3d 1129, 1135 (9th Cir. 1998) (deference is afforded to an agency's

2   reasonable construction of its own regulatory language because its expertise makes it well-suited

3   to interpret its own language).  For these reasons, the Court must defer to the Commissioner's

4   interpretation.  See Lezama-Garcia, 666 F.3d at 525; Auer, 519 U.S. at 461.

5         As noted by the Appeals Council, plaintiff does not contest the ALJ's factual finding that

6   Brice did not hold J.M.H-B. out as his child before he died, even though it was possible for him to

7   do so, or the finding that she has not established a presumption of paternity under any other

8   provision of California law.  [See AR at 17, 141; JS at 3-10.]

9         Accordingly, the Commissioner's determination that J.M.H-B. "has not established that she

10  is the wage earner's child within the meaning of the Social Security Act" is supported by

11  substantial evidence.  Moncada, 60 F.3d at 523.

12

13  **E.     PLAINTIFF'S EQUAL PROTECTION CLAIM FAILS**

14        In her second contention of error, plaintiff asserts that the application of California Probate

15  Code § 6453(b)'s "during the father's lifetime" requirement to J.M.H-B.'s ability to establish that

16  she is Brice's child under California's intestacy scheme, and thus under the Social Security Act

17  (see 20 C.F.R. § 404.355(a)(1)), "would clearly result in violation of [J.M.H-B.'s] right to equal

18  protection of the law."  [JS at 9-10.]

19        To support her argument, plaintiff relies on Daniels on Behalf of Daniels v. Sullivan, 979

20  F.2d 1516, and the Commissioner's adoption of Daniels in Social Security Acquiescence Ruling

21  97-3(11). [JS at 9-10.]  Plaintiff's reliance on Daniels is misplaced, however.  As noted supra, the

22  Georgia intestacy law at issue in Daniels provided that a child born out of wedlock could only

23  inherit from or through his father if, during the lifetime of the father and after the conception of the

24  child, "either (1) a court of competent jurisdiction has declared the child to be legitimate or has

25  entered an order establishing paternity or (2) the father has signed the birth certificate or executed

26  a signed, sworn statement attesting to paternity."  Daniels, 979 F.2d at 1518.  The court in Daniels

27  concluded that, as applied to the claimant's case, the requirement that paternity be established

28  during the lifetime of the father effectively imposed an insurmountable barrier, and thus "the Social

25

1   Security Act's incorporation of the Georgia intestacy scheme violate[d] equal protection."  Id. at

2   1520.

3          As discussed supra, California Probate Code § 6453(b)'s requirement that a court order

4   declaring paternity be entered during the father's lifetime is merely one of multiple ways to

5   establish paternity under that section, and therefore is unlike the Georgia intestacy scheme's

6   requirement in Daniels that an illegitimate child establish paternity during the lifetime of the father

7   as a condition precedent to the satisfaction of the remaining requirements of the statute.  Because

8   J.M.H-B. could have established paternity by providing clear and convincing evidence that Brice

9   openly held her out as his own, or by showing that it was impossible for Brice to hold her out as his

10  own and by establishing paternity by clear and convincing evidence (see Cal. Prob. Code §

11  6453(b)(2)-(3)), section 6453(b)'s "during the father's lifetime" limitation is distinguishable from the

12  "during the lifetime of the father and after the conception of the child" limitation in Georgia law that

13  the Daniels court concluded made illegitimacy an insurmountable barrier to the Daniels claimant's

14  receipt of child's survivor benefits.  See Daniels, 979 F.2d at 1518 n.2, 1520-21.  Plaintiff has not

15  established that section 6453(b) creates an insurmountable barrier to J.M.H-B.'s receipt of

16  benefits.  See also, e.g., Abkes v. Apfel, 30 F. Supp. 2d 1149, 1156-57 (N.D. Iowa 1998) (as

17  applied to the claimant, Iowa intestacy law requiring that paternity be established during the father's

18  lifetime, or that one of two other criteria was satisfied, did not create an insurmountable barrier

19  resulting in an equal protection violation).

20         In addition, to the extent plaintiff contends that section 6453(b)'s "during the father's

21  lifetime" limitation fails the substantial relationship test set forth in Lalli v. Lalli, 439 U.S. 259, i.e.,

22  that it does not "bear an evident and substantial relation to the particular state interests [the]

23  statute is designed to serve" (id. at 268), such a claim is foreclosed by Campbell ex rel. Campbell

24  v. Apfel, 177 F.3d 890.  In Campbell, the plaintiff challenged the application of the "during the

25  father's lifetime" requirement under the predecessor to what is now section 6453(b) -- former

26  California Probate Code § 6408(f)(2) -- which provided that a parental relationship for the purpose

27  of intestate succession "may not be established by an action under ... the Civil Code unless either

28  (A) a court order was entered during the father's lifetime declaring paternity or (B) paternity is

1 | established by clear and convincing evidence that the father has openly and notoriously held out
2 | the child as his own." Campbell, 177 F.3d at 892 (quoting Cal. Prob. Code § 6408(f)(2)
3 | (repealed)).  The Ninth Circuit held that the California Court of Appeal, in a case decided prior to
4 | Campbell -- Estate of Sanders, 2 Cal.App.4th 462, 3 Cal.Rtpr.2d 536 (Cal.App. 4 Dist. 1992) --
5 | correctly analyzed the issue of whether former section 6408 violated the equal protection clause
6 | (using the substantial relationship test in Lalli) and "properly held that, 'requiring a court order
7 | establishing paternity to be issued during the father's lifetime is substantially related to the state
8 | interest the statute was intended to promote'" (Campbell, 177 F.3d at 894), that is, to avoid
9 | "difficult problems of proof when the father is no longer alive" in "the just and orderly disposition
10 | of a decedent's property in cases involving paternity claims." Estate of Sanders, 2 Cal.App.4th
11 | at 476 (citing Lalli, 439 U.S. at 268-71).

12 |      Plaintiff has not established that the application of section 6453(b)'s "during the father's
13 | lifetime" requirement to J.M.H-B.'s ability to establish that she is Brice's child under California's
14 | intestacy scheme violates J.M.H-B.'s right to equal protection of the law.

15 |      Accordingly, the Appeals Council's November 10, 2011, decision to deny child's survivor
16 | benefits is free from legal error, is supported by the record, and is entitled to deference.  Remand
17 | is not warranted.

18 |
19 | **V.**
20 | **CONCLUSION**

21 |      **IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative,
22 | remand, is **denied**; and  2. the decision of the Commissioner is **affirmed**.

23 |      **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the
24 | Judgment herein on all parties or their counsel.

25 |
26 | DATED: March 13, 2013

27 | PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

28 |